**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CLIFTON EARL LEWIS, III,

      Plaintiff,

v.                                                                  Case No. 6:23-cv-527-WWB-NWH

UNITED STATES OF AMERICA,

      Defendant.

_____/

## <u>ORDER</u>

THIS CAUSE is before the Court following a two-day bench trial on September 22, 2025 and September 23, 2025.  After Plaintiff completed his case and rested, Defendant made an ore tenus motion for a judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c) as to Plaintiff's claim for negligence ("**Motion**").  (*See* Doc. 88).  Having considered all the evidence and testimony submitted by Plaintiff, as well as the oral arguments by the parties in this matter, the Court grants Defendant's Motion for the reasons stated on the record and herein.

## I.    LEGAL STANDARD

"If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."  Fed. R. Civ. P. 52(c).  "A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)," which provides that the Court "must find the facts specially and state its conclusions of law separately" and that the "findings and conclusions may be stated on the record after

the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court."  Fed. R. Civ. P. 52(a), (c).

"[I]n addressing a Rule 52(c) motion, the court does not view the evidence in the light most favorable to the nonmoving party, as it would in . . . a Rule 50(a) motion for judgment as a matter of law; instead, it exercises its role as factfinder."  *Pinero v. 4800 W. Flagler L.L.C.*, 430 F. App'x 866, 868 n.1 (11th Cir. 2011) (quoting *United States v. $242,484.00*, 389 F.3d 1149, 1172 (11th Cir. 2004) (Tjoflat, J., concurring)); *see also Grant v. Bullock Cnty. Bd. of Educ.*, 895 F. Supp. 1506, 1509 (M.D. Ala. 1995) ("Because the court acts as both the judge and the jury, it may resolve conflicts in the evidence, as well as make credibility assessments.").  "The judge may sustain" a Rule 52(c) motion "even though a prima facie case may have been presented."  *Martinez v. U.S. Sugar Corp.*, 880 F. Supp. 773, 775 (M.D. Fla. 1995).

## II.    FINDINGS OF FACT

On June 1, 2020, Plaintiff, Clifton Earl Lewis, was involved in a minor car accident with a United States Postal Service ("**USPS**") vehicle at the intersection of A Lane and B Way in Cocoa, Florida.  (Doc. 91-2 at 6; Doc. 93 at 146:9–11).  At the time of the accident, Plaintiff was "test driving" a used 2018 Nissan Altima and traveling at approximately ten miles per hour.  (Doc. 91-2 at 2; Doc. 93 at 88:11–13; 145:3–5; 146:18–21).  The accident occurred while the USPS vehicle was making a U-Turn at the intersection of B Way and Plaintiff was driving down A Lane.[1]  (Doc. 93 at 72:13–73:3; *see also* Doc. 91-12 at 1–7).  There was a stop sign on B-Way, which gave Plaintiff the right-of-way.  (Doc. 92 at 52:2–

---

[1] Plaintiff makes no claim for damages based on any physical damage done to the vehicle.  (Doc. 1 at 3–4).

6; Doc. 93 at 173:11–19).[2]  Although Plaintiff testified on direct examination that he had never seen the USPS vehicle make a U-turn at this intersection before, his deposition testimony revealed this assertion was untrue and that he had, in fact, witnessed the maneuver on several prior occasions.  (Doc. 92 at 50:22–51:7).

Immediately after the accident, Plaintiff made three calls.  First, Plaintiff called Bob Steele Chevrolet, the dealership that owned the vehicle, to notify them about the accident.  (Doc. 91-2 at 2; Doc. 93 at 77:15–78:8).  Notably, Plaintiff did not exit the vehicle until an employee with Bob Steele Chevrolet arrived at the scene.  (Doc. 93 at 77:9–12).  Next, Plaintiff called 911 emergency services.  (*Id.* at 78:9–12).  However, Plaintiff testified that he declined medical treatment because he believed he was being conspired against by USPS and other emergency responders.  (*Id.* at 81:15–82:13).  Finally, Plaintiff called an attorney with the Dan Newlin law firm, which would go on to represent him and refer him to various physicians.  (*Id.* at 78:11–12, 154:2–17, 156:4–10).  Thereafter, Plaintiff left the scene and returned home to go to sleep.  (*Id.* at 86:8–11).

Plaintiff has a long history of injuries to his neck and back prior to and after this incident.  (*See generally* Doc. 92 at 54:12–58:25).  While playing football in high school, Plaintiff suffered injuries to his back after a "helmet to helmet accident."  (Doc. 93 at 43:9–44:14).  Plaintiff testified the football related collision caused stinging and numbness in the center area of his spine.  (*Id.* at 43:18–44:10).  The symptoms and pain related to that accident were ongoing to the extent that Plaintiff reported it to his treating physician, Dr.

---

[2] Although Plaintiff had the right of way, testimony revealed he saw the USPS truck making the U-turn in time to stop but chose not to do so.  (Doc. 92 at 51:19–52:7; Doc. 93 at 146:22–151:11).

Walter Seifert, in 2017.[3]    (Doc. 89-8 at 36).    Plaintiff claimed that, among other medications, he was prescribed medical marijuana to treat his pain, however, his medical records do not corroborate this claim.  (Doc. 92 at 54:17–55:25; *see generally* Doc. 89-8).  Plaintiff also sustained various injuries related to dirt bike and go-kart accidents, (Doc. 93 at 134:17–135:5), and suffered a gunshot wound the groin, resulting in an injury requiring surgery before the accident in this case.  (Doc. 91-1 at 8).  Finally, Plaintiff sustained major injuries during a car accident in 2022, leaving Plaintiff with eight broken ribs and a collapsed lung.  (Doc. 93 at 117:17–118:3).

As relevant to the car accident in this case, Plaintiff presented testimony from three medical experts: (1) Dr. Bret Baynham, a physician who administered conservative care and injections to Plaintiff; (2) Dr. Seifert, a physician who treated Plaintiff for back injuries prior to and after the accident; and (3) Dr. Scott Tucker, a chiropractor who treated Plaintiff at Accurate Healthcare following the accident.  Neither Dr. Baynham nor Dr. Seifert provided a causation opinion at trial.  As to causation, Dr. Baynham testified that the cause of Plaintiff's injuries was not "germane" to his treatment.  (Doc. 94 at 365:21–366:3).  Likewise, Dr. Seifert testified that his treatment only addressed Plaintiff's self-reported symptoms and did not include a determination as to the cause of Plaintiff's pain or injuries.  (Doc. 93 at 200:19–201:12).  As such, Dr. Tucker, a licensed chiropractor and massage therapist, was the only expert witness to testify as to causation on behalf of Plaintiff.  (*Id.* at 238:3–18).

---

[3] Plaintiff was treated for low-back pain, muscle spasms, sciatica, and "intervertebral disc degeneration" by Dr. Seifert throughout the course of 2017 and 2018. (Doc. 89-8 at 18–39).

On direct examination, Dr. Tucker testified that Plaintiff began receiving treatment at Accurate Healthcare on June 2, 2020, the day after the accident, and continued with care through November 2020. (*Id.* at 206:23–207:3; 236:1–5).  According to Dr. Tucker, Plaintiff returned to Accurate Healthcare for a follow-up visit on May 28, 2021, with complaints about muscle spasms, pain in his left arm, and discomfort in his right upper extremity. (*Id.* at 236:2–17).  Based on his treatment, [4] Dr. Tucker testified that he believed Plaintiff sustained disc herniations with extrusions due to the accident and that those injuries were permanent in nature.  (*Id.* at 237:12–20).

Dr. Tucker arrived at his opinion based on (1) knowledge that a car accident occurred, (2) Plaintiff's self-reported symptoms, and (3) the existence of injuries based on physical tests and results of MRI imaging.  (Doc. 92 at 57:25–59:8).  On cross-examination, Dr. Tucker admitted he did not have an opportunity to rule out other prior events as the cause of Plaintiff's injuries, and did not know of the condition of Plaintiff's spine prior to the June 2020 accident.  (Doc. 93 at 256:4–18; 263:21–264:1).  Moreover, Dr. Tucker did not know any details about the accident, which he testified would be important to determining causation, including the speed Plaintiff was traveling, the speed of the other vehicle, whether the airbags deployed, or if Plaintiff engaged in any physically demanding activity after the accident.  (*Id.* at 245:14–17; 248:9–50:22).  He also testified that while treating Plaintiff he was unaware that Plaintiff had previously been diagnosed with muscle spasms, back pain, chronic pain due to trauma, and sciatica by Dr. Seifert for injuries sustained prior to the accident at issue in this case.  (*Id.* at 253:24–254:20).

---

[4] The physical exams performed on Plaintiff included orthopedic tests, muscle testing, and range of motion testing.  (Doc. 93 at 239:12–16).

To his credit, Dr. Tucker also testified that he has no objective medical evidence that Plaintiff's muscle spasms or tenderness began after the accident or that his range of motion decreased as a result of the accident. (*Id.* at 265:14–24; 266:18–21).

## III.    CONCLUSIONS OF LAW

The Complaint asserts one claim of negligence under the Federal Torts Claim Act ("**FTCA**"). (*See generally* Doc. 1). Claims brought pursuant to the FTCA are governed by "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 478 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA."). In this case, Florida law governs. "To establish negligence under Florida law, a plaintiff must prove four elements: (1) a duty of care owed by the defendant to the plaintiff, (2) the defendant's breach of that duty, (3) causation, and (4) damages suffered by the plaintiff." *Eason v. United States*, 771 F. Supp. 3d 1263, 1282 (M.D. Fla. 2025). "The plaintiff bears the burden of establishing all four elements by a preponderance of the evidence." *Id.*

To prove causation, the plaintiff must provide evidence showing that "it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result." *Rementer v. United States*, No. 8:14-CV-642-T, 2015 WL 5934522, at *2 (M.D. Fla. Oct. 9, 2015) (quotation omitted). "A mere possibility of such causation is not enough." *Id.* (quotation omitted). Plaintiffs with "non-readily observable injuries require expert medical evidence to prove causation." *Willis v. Royal Caribbean Cruises, Ltd.*, 77 F.4th 1332, 1338 (11th Cir. 2023); *see also Vero Beach Care Ctr. v. Ricks*, 476 So. 2d 262, 264 n.1 (Fla. 1st DCA 1985) ("Soft-tissue injuries, such as lower back difficulties, are

not readily observable, and hence are not susceptible to evaluation by lay persons."). Here, Plaintiff claims that he sustained internal injuries to his neck and lower back. As a result, Plaintiff was required to present expert medical evidence to prove causation by a preponderance of the evidence.

The only expert testimony relevant to this Court's analysis with respect to causation is Dr. Tucker's. Expert opinions that appear to rely on the "temporal relationship between the subject accident and the onset of the injuries and fail[] to systematically rule out other potential causes" are "routinely rejected as unreliable by courts in this Circuit." *Derochers v. Amica Mut. Ins.*, No. 6:15-cv-2151-Orl, 2017 WL 8948381, at *6 (M.D. Fla. Oct. 17, 2017); *see also Guinn v. AstraZeneca Pharms. LP*, 602 F.3d 1245, 1254 (11th Cir. 2010) ("[U]sing temporal proximity to establish causation 'is not an exercise in scientific logic but in the fallacy of post-hoc propter-hoc reasoning, which is unacceptable in science as in law.'" (quoting *Black v. Food Lion, Inc.*, 171 F.3d 308, 313 (5th Cir. 1999))). Nor can expert testimony be based off temporal proximity and subjective complaints of pain, or anecdotal evidence alone. *Jazairi v. Royal Oaks Apartment Assocs.*, 217 F. App'x 895, 898 (11th Cir. 2007).

In this case, the Court finds Dr. Tucker's opinion as to causation entirely unreliable and unconvincing for several reasons. First, the Court finds that Dr. Tucker, by his own admission, failed to rule out other potential causes of Plaintiff's injuries and provided his causation opinion without any knowledge of Plaintiff's several, relevant preexisting medical diagnoses. He did not know that Plaintiff was previously injured in a head-to-head collision while playing football, received medical treatment as a result, and that he was diagnosed with similar conditions as those he was treated for after the June 2020

7

accident.  (Doc. 93 at 252:23–254:20).  He also admitted that a physically demanding job, such as working as a roofer, could have caused a herniated disc and did not rule this out as a cause of Plaintiff's injuries.  (*Id.* at 256:24–257:12).  Even where Dr. Tucker administered certain tests, such as a physical range of motion test, he admitted that he did not possess objective medical evidence that Plaintiff's range of motion decreased because of the June 2020 accident or that his muscle spasms or tenderness began after the same.  (*Id.* at 265:17–24; 266:15–21).  Indeed, Dr. Tucker admitted that he did not review any of Plaintiff's medical records prior to this accident and did not speak to any of Plaintiff's medical providers before arriving at his causation conclusion.  (*Id.* at 252:12–19).  At most, the Court finds that Dr. Tucker, by his own admission, was only able to determine that it was possible for the June 2020 accident to have caused some of Plaintiff's injuries.  But "[a] mere possibility of such causation is not enough."  *Godding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984) (quotation omitted).

Next, Dr. Tucker's causation opinion is almost entirely rooted in the temporal proximity between the accident and the treatment rendered to Plaintiff and Plaintiff's subjective pain complaints.  To be sure, in the absence of any objective medical evidence and without knowledge of any of Plaintiff's history, Dr. Tucker appeared to arrive at his causation opinion simply because Plaintiff sought treatment from him after the accident occurred.  On this fact alone, Dr. Tucker assumed that the pain Plaintiff reported and the injuries he observed was caused by the accident.  As such, the Court cannot help but conclude that his opinion falls squarely into the category of those that courts routinely reject as unreliable.  *Derochers*, 2017 WL 8948381, at *6; *see also Hendrix ex rel. G.P. v.*

*Evenflo Co.*, 609 F.3d 1183, 1195 (11th Cir. 2010) (holding that causation experts must consider other possible causes of symptoms then "eliminate all causes but one").

Finally, the glaring flaws in Dr. Tucker's causation opinion were compounded by the visible change in the doctor's demeanor between direct-examination and cross-examination. "[I]t is the exclusive province of the judge in non-jury trials to assess the credibility of witnesses and to assign weight to their testimony." *Childrey v. Bennett*, 997 F.2d 830, 834 (11th Cir. 1993). "When the credibility of the plaintiff and his or her witnesses is questioned, the court may properly find that the plaintiff has not sustained the burden of proof required by law." *Foster v. United States*, 858 F. Supp. 1157, 1164 (M.D. Fla. 1994).

Though on direct examination Dr. Tucker confidently stated he believed Plaintiff's injuries were caused by the June 2020 accident, his confidence waned during cross-examination. As the Court noted on the record, what cannot be gleaned from reading the transcript was "the visible amount of distress" the Court observed on Dr. Tucker's face when confronted with his failure to rule out other potential causes of Plaintiff's injuries, account for Plaintiff's overlapping preexisting diagnoses, or describe with any detail the circumstances or severity of the accident at issue. (Doc. 92 at 22:2–20). To be clear, the Court does not doubt that Dr. Tucker treated Plaintiff to alleviate or mitigate Plaintiff's reports of pain, and that Dr. Tucker was seemingly able to help Plaintiff with some of his concerns. (Doc. 93 at 234:8–24). But the perceptible decrease in Dr. Tucker's volume, the pauses between his thoughts, the change in his disposition, and his visible discomfort certainly gave the Court the impression that he was no longer confident in his initial opinion as to causation. And the Court was not confident in Dr. Tucker's opinion at all.

9

Therefore, the Court does not find Dr. Tucker's testimony with respect to causation reliable or convincing and that, as a result, Plaintiff has failed to prove the element of causation.

## IV.    CONCLUSION

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Ore Tenus Motion for Judgment Under Rule 52(c) (Doc. 88) is **GRANTED** for the reasons stated on the record and set forth in this Order.

2. The Clerk is directed to enter judgment, in favor of Defendant and against Plaintiff, providing that Plaintiff shall take nothing on his claim. Thereafter, the Clerk is directed to terminate all pending motions and close this case.

**DONE AND ORDERED** in Orlando, Florida on February 18, 2026.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

10